Jessie W. Donahue, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 92980. Promulgated April 29, 1941.

*Paul L. Peyton, Esq.*, for the petitioner.
*L. A. Spalding, Jr., Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The single issue for our determination is whether or not the income of certain trusts created by petitioner is taxable to her.

Petitioner contends that section 166 of the Revenue Act of 1934 is not applicable since she possessed no power to revest the corpora of the trusts. She maintains that the trusts had substance and that their income can not be taxed to her under the doctrine of *Helvering* v. *Clifford*, 309 U. S. 331. Petitioner further contends that the income of the trusts did not discharge a legal obligation of petitioner, so that the income is not taxable to her under *Douglas* v. *Willcuts*, 296 U. S. 1, and *Helvering* v. *Leonard*, 310 U. S. 80. Finally, petitioner urges that the rule of *Lucas* v. *Earl*, 281 U. S. 111, as delineated in *Helvering* v. *Horst*, 311 U. S. 112, does not apply.

Respondent makes no contention that the trusts are revocable or that section 166 applies. He argues that, since the trust instrument was under seal, the seal is to be given presumptive effect, binding petitioner to her promise to make up deficiencies in the trust income payable to the named beneficiaries. He asserts that this promise brings petitioner within the scope of *Helvering* v. *Leonard, supra*, and *Weir* v. *Commissioner*, 109 Fed. (2d) 996. He also contends that the trusts lack substance and that their income is taxable to petitioner under section 22 (a) of the Revenue Act of 1934. Finally, respondent relies on *Helvering* v. *Horst, supra*, and *Huber* v. *Helvering*, 117 Fed. (2d) 782, arguing that the trust agreement effected a mere assignment of income.

The effect of the last sentence in the quoted paragraph numbered 4 in our findings was to make the trusts irrevocable for the lives of the beneficiaries. Section 166, therefore, is not applicable. *Helvering* v. *Wood*, 309 U. S. 344. Consequently, we must consider respondent's contentions concerning the applicability of section 22 (a) of the Revenue Act of 1934.

We are of the opinion that the instant case differs substantially from *Helvering* v. *Clifford, suprā*. There the trust was for a five-year period, the beneficiary was a member of the grantor's immediate family group, and the grantor was also the trustee. Here, the trusts were to endure for the lives of their respective beneficiaries, the beneficiaries were relatives of petitioner's deceased husband and had never been members of petitioner's household, and petitioner was not the trustee. The fact that petitioner retained the right to direct invest-

ments is not enough, by itself, to cause the application of the *Clifford* doctrine. *Commissioner* v. *Branch*, 114 Fed. (2d) 985. The trusts created by the agreement of May 1, 1931, were real trusts and their income may not be treated as that of petitioner on the ground that she retained the major incidence of ownership and control of the corpora.

Respondent's next contention is that the income of the trusts discharged a legal obligation of petitioner and was taxable to her under *Douglas* v. *Willcuts, supra.* The evidence presented clearly shows that these trusts differ from those considered in the "legal obligation" cases of *Douglas* v. *Willcuts, supra; Helvering* v. *Coxey*, 297 U. S. 694; and *Helvering* v. *Stokes*, 296 U. S. 551, in that here the income can not be said to be in discharge of any legal enforceable obligation existing prior to the time of the creation of the trusts. Petitioner had no obligation to support the beneficiaries of the trusts. See New York Code of Criminal Procedure, sec. 914; New York Public Welfare Law, sec. 125; *Dunlevy Milbank*, 41 B. T. A. 1014. The record indicates that she created the trusts out of pure benevolence and humane feeling for decedent's relatives.

Respondent asserts further, however, that the provision in the trust agreement by which petitioner agreed to make up deficiencies in trust income payable to the beneficiaries was a legally enforceable obligation and consequently the income of the trusts must be taxed to petitioner, citing *Helvering* v. *Leonard, supra; Weir* v. *Commissioner, supra.* Respondent also asserts that at the time the trust agreement was executed the law of New York provided that a seal was presumptive evidence of sufficient consideration.

The Weir case was preceded by *Dixon* v. *Commissioner*, 109 Fed. (2d) 984, decided a few days prior, in which case the same court discussed the instant question at length. Addressing itself to the law as laid down in *Douglas* v. *Willcuts, supra; Helvering* v. *Fitch*, 103 Fed. (2d) 702; and *Helvering* v. *Leonard*, 105 Fed. (2d) 900, the court observed:

\* \* \* However, we think an accurate demarcation in the instant cause may be accomplished by testing our peculiar circumstance against the two main factors which pervade the controlling decisions.

The first is the nature of the "obligation" ruled upon. In all cases it has been "pre-existing", i. e., alimony decreeable by court, *Douglas* v. *Willcuts*, above cited, the support of minor children, *Helvering* v. *Schweitzer*, 296 U. S. 550, a pre-existing debt, *Helvering* v. *Blumenthal*, 296 U. S. 552. The second, cognate to the first, is the element of tax avoidance.

As Professor Magill puts it:

"\* \* \* the debtor has created a trust, the income of which is to be used to pay off the principal and interest of his obligations, remainder to himself or persons of his choice. If he paid off the debts directly out of his own income, he would have no deduction for the sums paid in discharge of principal.

By use of the trust device he seeks to reduce his own taxable income by the amount of the income from the corpus of the trust; and thus in effect to obtain a partial deduction from his income for the amounts used to discharge his debts.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Had the husband been required to pay the same amount of alimony directly, he would have been taxable upon the total amount of his net income with no deduction therefor. His income tax liability should not be changed by his creation of a trust to take care of his obligation for him." Magill, above cited, pp. 213, 243.

A like possibility of sidestepping the nondeductibility of a capital outlay inheres, of course, in the application of trust income to the support of wives and minor children. What, therefore, is the "obligation," if any, and the avoidance, if any, implicit in the case at bar?

Relating the case under consideration to the above stated concepts, the court found no obligation.

In the *Dixon* case, the trust contained a contingent obligation to make good income deficiencies by adding securities to the corpus. In considering this phase of the case the court states:

&ast; &ast; &ast; Where the trust is set up to meet the debt, he must be taxed to prevent him, as we have seen, from circumventing the non-deductibility of debt payments. Where, on the other hand, the trust antedates a true guaranty, there is no circumvention of non-deductibility, even if the guaranty ripens into a debt. However, if trust and guaranty are roughly contemporaneous in origin, it does not seem unduly cynical to unravel the whole transaction into a continuing obligation to pay a stated amount at future intervals to which payment trust income is applied. So the circumstance is brought within the pre-existing debt criterion, and the settlor is taxed.

The court absolved the grantor from tax on the trust income involved in the *Dixon* case.

In the *Weir* case, the court, after referring to the principles discussed in the *Dixon* case, held the grantor taxable on the trust income, stating that the presence of a promise to pay by way of guaranty "affords the sole, yet a valid, ground for taxing the income of the instant trust to the petitioner."

The case at bar presents certain aspects of both the *Dixon* case and the *Weir* case and certain other aspects not found in either. In both of the cited cases there was a preexisting marital community, with such rights and obligations as adhered thereto under local law. In the case before us there is no such situation. The trust now before us had no background of unhappy marital relations. Grantor was under no legal obligation to support the beneficiaries of the trust. In the *Dixon* case the trust and settlement agreement recited that the husband "in recognition of his legal liability to support his wife, and pursuant to her demands, has agreed to make provision for her support." By its terms the wife released grantor from all right of dower or any right under intestate laws or any right to take against

the will of grantor. The grantor released his right of curtesy. The agreement was executed three weeks before filing of a divorce action by the wife. In the *Weir* case the trust was likewise in consideration of the release of the right of dower and other marital rights and was executed two days prior to the filing of a divorce action by the wife. In both cases there was real consideration on either side and the discharge of a preexisting legal obligation. In the case presently before us, there was no release of any rights or any recited consideration other than the nominal one of "one dollar and other good and valuable considerations." There was no preexisting obligation of any kind.

In the *Dixon* case the grantor undertook to supplement the trust corpus so that it would yield the income requisite to make the stipulated payments. In the *Weir* case there was an unconditional guaranty of the payment of the stipulated payments. In the instant case there was a substantially similar guaranty.

When all the facts are marshaled and compared with those in the various cited cases, we are of the opinion that the present case falls outside the category of those where the income should be held taxable to the grantor. There was no marital background. There was no preexisting obligation. There is no evidence that tax avoidance was in the grantor's mind. Nothing in the nature of consideration was parted with by the beneficiaries. The undertaking to make good the deficiencies in income existed only by virtue of the terms of the trust instrument. It was in the nature of a unilateral commitment by the donor of the gifts. The fact that the agreement was under seal is only presumptive evidence of consideration. New York Civil Practice Act, § 342. It does not follow that the undertaking constitutes an obligation enforceable by the beneficiaries. *Farmers Loan & Trust Co.* v. *Winthrop*, 207 App. Div. 356, 363; *Alexander* v. *Equitable Life Assurance Society*, 233 N. Y. 300, 307. In our opinion the payment of the trust income discharged no enforceable legal obligation of the grantor.

Finally, we are not impressed by respondent's argument that this case comes within the doctrine of *Helvering* v. *Horst, supra.* We do not believe that the Supreme Court intended, by the cited decision, to sweep aside as futile gestures all trusts and gifts. Petitioner did not merely assign income. She placed the legal title to the trust corpus in the trustee beyond recall for the lives of the several beneficiaries.

Under the facts here present, we are impelled to the conclusion that the trust income is not taxable to petitioner.

*Decision will be entered under Rule 50.*